# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville May 21, 2013

## DOUGLAS KILLINS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 40200141   Michael R. Jones, Judge**

**No. M2012-02300-CCA-R3-PC - Filed June 26, 2013**

The Petitioner, Douglas Killins, appeals the Montgomery County Circuit Court's summary dismissal of his petition for post-conviction relief from his 2003 conviction for second degree murder and Range II thirty-eight-year sentence. The Petitioner contends that the trial court erred by denying him relief because he received the ineffective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Douglas Killins, Henning, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Arthur F. Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from the 2002 stabbing death of Mary Moseley, for which the Petitioner was convicted. The Petitioner appealed his conviction, and this court affirmed the conviction and summarized the facts of the case as follows:

> Ms. Mary Moseley, a thirty-three year old mother of four, was stabbed twenty-three times with a knife in the late evening hours of February 11, 2002, in the back yard of the Defendant's home in Clarksville[,Tennessee]. Officer Brant Reed . . . testified that he found the victim lying on her stomach with her head turned to the side, her mouth half open, and her eyes glazed over. When

he asked her what happened, she moved her mouth but no audible response could be heard. Officer Reed lifted the back of the victim's shirt and observed multiple stab wounds. Shortly thereafter the victim . . . was pronounced dead.

. . . .

At trial, the evidence revealed that the victim had been dating the Defendant, and they were together in the back yard of the Defendant's house the night of the crime, smoking crack cocaine. An argument broke out and escalated to a struggle, which ultimately involved a knife with a three to four inch blade, and ended in the victim's death.

Ms. Lakesha Killens [sic], the Defendant's niece, testified that she lived in the house with the Defendant and several other family members. On the night of the murder she heard talking, got out of bed to investigate, and was told by her uncle, Mr. Bert Mayo, to call 911, which she did. Mr. Mayo, the Defendant's brother, testified that he observed the victim smoking crack earlier on the night of the murder. He further testified that he was in his room later that night when . . . he . . . look[ed] outside the house, and . . . he observed someone lying on the ground. He testified that he approached the victim and heard her say "evidently I must have pushed [the Defendant] too far." Mr. Mayo also stated that after instructing his niece to call 911, he told the Defendant to leave until things could calm down. Mr. Mayo added that in the past he had observed the victim with a small pocket knife, which she used to cut up rocks of crack cocaine; that the victim often became violent when she was on crack; and that "she brung it on herself." The victim's sister, Debra Moody, testified that the victim did not use drugs, and never carried a knife.

Officer Reed testified that when he arrived on the scene the victim's jacket was up around her "head, neck, shoulder area." The State presented forensic evidence demonstrating that blood found on the clothes the Defendant was wearing when he surrendered to police the night of the murder belonged to the victim. Additionally, scrapings from under the victim's fingernails contained the Defendant's DNA. Dr. Thomas Deering, who performed the autopsy on the victim, testified that the victim had been drinking and ingesting cocaine shortly before her death. He also testified that the victim had a total of twenty-three knife wounds. . . . The bulk of the stab wounds formed a pattern across the victims chest and were inflicted in . . . a "rapid fire" manner. He estimated the victim bled to death "quickly," which he described as less than fifteen minutes. He also testified that the punctures in the victim's jacket

-2-

suggest it had been pulled over her head during much of the stabbing, which also accounted for the relatively few defensive wounds found on the victim.

[T]he Defendant testified that he and the victim had been smoking crack cocaine for some time that night, but ran out. He was tired and wanted to retire for the evening, but stated the victim wanted more cocaine and demanded that he go out and rob someone to obtain funds for purchasing more drugs. When he refused to comply with her request, the Defendant testified that she became "wild," began screaming, grabbed her pocket knife and "came at me." The Defendant further testified that he managed to take the knife away from her, but she still attacked him, scratching at his eyes. He said he was therefore forced to stab her in defense. The Defendant stated that she continued to attack him and he continued to stab her with the knife until "she stopped struggling."

The Defendant also testified that he had several physical impairments, some the result of multiple fights while incarcerated; that the victim was bigger than he was; and that he feared for his life as he struggled with the victim. The Defendant further stated that he didn't think his stabs would kill her as the knife was "small" and the victim was "fat." Near the conclusion of his testimony, when questioned by the State as to why he did not use less force to defend himself from the victim's alleged attack, the Defendant stated that he "flipped out," and "lost it."

*State v. Douglas V. Killins*, M2004-00341-CCA-R3-CD, slip op. at 1-3 (Tenn. Crim. App. Jan. 13, 2005), *perm. app. denied* (Tenn. May 2, 2005).

The Petitioner sought post-conviction relief, alleging the ineffective assistance of counsel for counsel's failure to present evidence of self-defense and the Petitioner's mental illness. *See Douglas V. Killins*, No. M2007-02086-CCA-R3-PC (Tenn. Crim. App. Nov. 5, 2008), *perm. app. denied* (Tenn. Mar. 16, 2009). The trial court denied post-conviction relief. This court affirmed the denial of relief and summarized the trial court's findings as follows:

The court is unable to find by clear and convincing evidence or by any standard that [trial counsel] failed to provide effective assistance of counsel. The claim of self-defense was presented to the jury. [Petitioner's] version of the facts was presented to the jury. [Petitioner] did not represent at the trial or at the post[-]conviction hearing that he was suffering from any delusions or

-3-

paranoia in reference to the killing. The court is taking judicial notice of the court file and in particular the charge of the jury. The charge of the jury included self-defense. The charge specifically included the language as follows: "the danger creating the belief of imminent death must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds." The jury weighed the evidence as presented. There has been no additional evidence presented that was not presented to the jury. The court finds that [trial counsel] did provide effective assistance of counsel. After the testimony of the medical examiner, the court believes that a finding of first-degree murder could have been sustained. The court believes that the testimony of the medical examiner likewise destroyed any theory of self-defense.

[Petitioner] also alleged that the failure to present the mental health issue had an effect on the intent issue. Based on the definition of seconding [sic] degree murder being a "knowing killing of another," the court finds that the failure to present any mental health issue could not possibly have affected the verdict considering the testimony of the medical examiner. There could be no prejudice whatsoever in that respect.

[Petitioner] also alleged that the failure to present mental health evidence was ineffective assistance of counsel as it related to voluntary manslaughter. . . . The jury had overwhelming evidence that [Petitioner] stabbed the victim many times. The jury had the information that [Petitioner] claimed that the victim had the knife originally. The jury had the proper jury instructions. The Petitioner has failed to present any evidence that would lead a "reasonable person" to act in an irrational manner. The court cannot find that the failure to prove [a] mental health issue would have changed the verdict of the jury.

[Trial counsel] took a set of facts that could have resulted in a first-degree conviction. Through his efforts, his client was convicted of second-degree murder. This court finds that in all respects [trial counsel] provided effective assistance of counsel.

*Id.*, slip op. at 6-7.

The Petitioner filed a second petition for post-conviction relief on July 25, 2012, alleging that he received the ineffective assistance of post-conviction counsel on the grounds that post-conviction counsel failed to investigate his case, failed to cross-examine witnesses, failed to procure evidence, and failed to "point out state of mind." He claimed *Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309 (2012), which addressed procedural defaults on federal

habeas corpus petitions filed pursuant to 28 U.S.C. § 2254, permitted his second petition for relief. The trial court treated this petition as a request to reopen and found that *Martinez* did not apply because the ineffective assistance of counsel was raised in the Petitioner's first petition for post-conviction relief. Although the Petitioner was advised of his right to appeal within thirty days of the court's order, he did not appeal the denial of relief.

The Petitioner filed a subsequent petition for post-conviction relief on October 5, 2012, alleging that he received the ineffective assistance of post-conviction counsel. He contended that post-conviction counsel was ineffective for reasons identical to those in his second petition for relief but attached his mental health records. The Petitioner submitted a handwritten letter requesting that the trial court "commute" his sentence from thirty-eight to twenty-five years. The Petitioner claimed he had been rehabilitated and was no longer a threat to society. The court denied post-conviction relief, ruling that the Petitioner had previously filed a petition for post-conviction relief. Regarding the request for the court to commute the Petitioner's sentence to twenty-five years, the court found that it had no power to commute the sentence. This appeal followed.

The Petitioner contends that the trial court erred by denying post-conviction relief. He argues he received the ineffective assistance of counsel. The State responds that the court did not err by summarily dismissing the petition. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

A petitioner is only entitled to file one petition for post-conviction relief attacking a single judgment. *See* T.C.A. § 40-30-102(c) (2012). "If a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed." *Id.* The record shows that after the Petitioner filed his first petition for post-conviction relief, the trial court held an evidentiary hearing and denied relief. Any subsequent petition for post-conviction relief was barred by statute, and we conclude that the court properly dismissed the petition. The Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE